h MARVIN, Chief Judge.
This appeal was referred to a five-judge re-argument panel under LSA-Constn. Art. 5, § 8(B), when one judge of the three-judge panel dissented to a reversal of the WCO’s rejection of the claimant’s demands in a worker’s compensation action.
On re-argument, and accepting the WCO’s assigning no credibility to claimant, we find that the probably inebriated claimant was a passenger in the truck of his supervisor who had begun driving on a mission for the employer before the temporarily disabling accident occurred. In such circumstances, the accident arose out of the claimant’s employment and claimant was in the course and scope of his employment. The deviation, if any, by the supervisor-driver is not attributable to claimant. See Malone-Johnson, Louisiana Civil Law Treatise, Workers’ Compensation, §§ 170, 174, and cases cited therein, e.g., Jagneaux v. Marquette Casualty Co., 135 So.2d 794 (La.App. 3d Cir.1961).
We reverse and remand to the WCO for a judgment to be rendered for claimant.
FÁCTS
The claimant, Robert Hoy, worked in 1996 as an apprentice helper to a bricklayer for the defendant employer, Slade Gilbert, a masonry contractor whose residence and “shop” were in Rocky Branch, a community in Union Parish north of West Monroe. During the time surrounding the late Saturday afternoon accident [April 13, 1996], Hoy’s bricklayer-supervisor was Lonnie Brown who drove Hoy and another laborer, Jimmy Howard, to and from a job site near Montieello, Arkansas. The employer, Gilbert, paid for the gasoline used by the supervisor, Brown, in Brown’s truck to go to and from the Montieello job site.
After stopping at a convenience store returning to Rocky Branch from Montieello and buying beer, Brown drove Hoy and Howard to Gilbert’s shop in 12Rocky Branch. Hoy may have had his own beer in the truck. During the drive Hoy and Brown drank beer, according to Howard. The employer, Gilbert, who was subpoenaed by his counsel, did not testify. His deposition, however, was placed in the record by defendant as a proffer, being Defendant’s Exhibit D-5.
Gilbert said he paid for the gasoline Brown would put in his truck each day to drive himself and Gilbert’s other employees to and from their homes and Montieello. Before dropping off Hoy and Howard at their homes on the afternoon of the accident, Brown and his passengers stopped in Rocky Branch where Gilbert and Brown talked [apparently about the Montieello job] for an estimated 30 minutes at Gilbert’s shop. Gilbert instructed Brown where to take one of his utility trailer tires in West Monroe to be repaired, saying that he [Gilbert] would later recover it. Gilbert said he did this after Brown volunteered to take the tire to the repair destination site [an Exxon service station] and said to Gilbert that he would be going that way. According to Gilbert, the station was on the corner of Cypress [U.S. Hwy. 80] and North 7th streets near the West Monroe courthouse and city hall. Some confusion among the witnesses exists in the record because of the fact that Gilbert used the services of two Exxon stations that are about three miles apart on Hwy. 80 and near the West Monroe city hall. After Gilbert and Brown conversed about the tire, it was put in the bed of Brown’s pickup for delivery to the repair destination.
Mrs. Gilbert testified Brown and his men arrived at the shop, estimating the time to have been about 4:30 or 5:00 p.m. and remained there for an estimated 20 or 30 minutes. Mrs. Gilbert said she did not hear the conversation between Brown and Gilbert but thought that her husband would have told Brown to take the tire to the Exxon station near the courthouse, a trip which she estimated would take about 15 minutes. She said she did not believe her husband drank a beer with Brown at lathe shop before Brown left with the tire. Gilbert, however, said Brown, who was drinking a beer when he arrived at the shop, “offered me one and I took one.” Gilbert said he saw only Brown and not Hoy or Howard drinking a beer at the shop. Gilbert said that he and Brown did not specifically discuss where Brown was going after Brown took the tire to its repair destination.
*76 Before Brown reached the tire-repair destination, the accident occurred on the Wall-Williams Road north of and between the two Exxon stations. Brown failed to negotiate a curve and lost control of his truck. Howard, on the back seat, testified that he heard Brown and Hoy, on the front seats, discussing a “short-cut” to the Exxon station as Brown drove toward West Monroe from Gilbert’s shop. Howard said he was half asleep on the back seat and did not know how the accident occurred.
Brown’s truck struck a culvert and turned over twice, causing a broken nose, facial and other injuries to Hoy, who fortunately was wearing a seat belt. Cross-examination of Hoy suggested that his blood taken at a hospital shortly after the accident was later determined to be .2 grams percent alcohol. Hoy left the hospital after X-rays were taken but returned the next day.
Hoy testified that Brown was attempting to avoid a dog when he lost control of the truck. Gilbert said that on Friday April 12, he had heard Howard mention the need to move his belongings to another residence and agreed that Brown and Hoy could assist Howard in the move when they were through with work. Howard lived several miles south of the tire-repair destination which was south of Gilbert’s shop.
Scott DeBoard, who had been sometimes employed by Gilbert as a mortar mixer, drove to the West Monroe hospital after being notified of the accident to transport Howard and Hoy home on that Saturday night. DeBoard testified that | .¡while driving them from the hospital, Howard and Hoy told him that the accident happened when Brown began chasing at a high speed someone who owed Brown money and that Brown ignored repeated protests and requests by Hoy and Howard to “slow down” before the accident occurred. On cross-examination, Hoy denied that the truck exceeded the 35-mph speed limit. Brown did not testify.
Detective Terrell of the West Monroe police department, who saw Brown’s truck go out of control and the resulting accident, testified about what he saw and did during and after the accident. Terrell said that he had not seen either a dog or another vehicle which might have been involved. Terrell estimated the truck was going about 50 mph in a 35-mph zone when it went out of control. Terrell noted the time of the accident as 6:26 p.m. The other witnesses did not note, but estimated the time or times of events at Gilbert’s shop before the accident when Brown, Hoy and Howard were there.
After Hoy left the hospital on Saturday night, Gilbert drove to Howard’s home where he found Brown and Hoy with Howard. Gilbert described Hoy as then being “drunk off his butt” and distinguished Howard’s home as “the place where he was moving from ” rather than where Howard mentioned on Friday to Gilbert as the place where Howard intended to move. Our emphasis. Gilbert declined to suggest that Brown showed signs of intoxication when he saw and talked to him on Saturday either before or after the accident.
Gilbert said he saw Brown and Hoy the night after the accident when they were again in the hospital where they told him that a dog ran out in front of Brown’s truck, causing the accident. Gilbert said that Howard told him they were “chasing somebody and ... driving too fast.” Gilbert said that Scott DeBoard had told him the same thing as Howard.
|sThe w.c. hearing officer deemed DeBoard most credible and explained why Hoy’s testimony was not deemed credible. The hearing officer concluded that while Brown, Hoy and Howard “may have been in the course and scope of their employment when they left the home of Mr. Gilbert, they detoured and the reason for the accident was the alcohol and the speeding ... [also finding] that something else happened, in between the time they left ... and the time the accident occurred .... there was a whole hour that elapsed somewhere in there.” Emphasis supplied.
DISCUSSION
Even when we accept the hearing officer’s negating any credibility to the claimant, Hoy, we find these circumstances clearly established in this record:
— Gilbert purchased gasoline for Brown’s truck when Brown used it to haul *77 Gilbert’s other employees to and from work and their homes;
— Brown, the supervisor, and Hoy, his subordinate, drank beer during Brown’s drive from Gilbert’s Montieello job to return Hoy and Howard to their homes several miles south of Rocky Branch and West Monroe;
— Stopping at his employer’s shop in Rocky Branch, Brown and Gilbert each had a beer while they conversed at Gilbert’s shop;
— Gilbert instructed Brown where to take Gilbert’s trailer tire for repair without designating a particular route to the tire-repair destination near the West Monroe city hall south of Gilbert’s shop after Brown said doing this would be no problem, that the tire-repair destination was on the way where he would be going;
— With Hoy in the front passenger seat of the truck and Howard on the back seat, Brown controlled the truck and was on a mission for Gilbert, driving on Wall-Williams Road north of two the Exxon stations;
— Hoy, sitting in the front passenger seat of Brown’s truck, was not in control of either his supervisor, Brown, who was driving, or Brown’s truck or of | fithe route which Brown drove, but was most probably drunk or under the influence of alcohol when the accident occurred;
— According to DeBoard, found most credible by the WCÓ, Hoy and Howard, before the accident, “kept telling [Brown] to slow down, and he wouldn’t ... and he went around a corner and flipped the truck;”
— Hoy suffered temporarily disabling injuries when the truck “flipped;”
— Gilbert recovered his utility trailer tire taken from the accident scene after the accident.
CONCLUSION
The applicable legal principles in the workers’ compensation treatise and in Jag-neaux v. Marquette Casualty Co., cited supra, were not argued or called to the attention of the WCO, who gave verbal reasons for the judgment. The WCO correctly recognized, however, that the circumstances presented arising-out-of and in-the-eourse- and-scope-of employment [the claimant’s burden of proving] and deviation issues [an affirmative defense, the defendant’s burden of proving]. The circumstances in which the principles of law on these issues are applied to resolve these issues are discussed in the authorities cited.
The dispositive issue in this appeal is not whether Brown, Hoy’s supervisor and driver of the truck, deviated from the mission he began for his employer, leaving the employer’s shop to take the employer’s' trailer tire to the repair destination and to transport his subordinate employee-passengers to their respective homes. The issue is whether Brown’s deviation from the stated employer missions may be legally attributable to Hoy, who was injured in the wreck of the truck.
We hold that an employee, being transported home from work as a passenger in his supervisor’s vehicle, the gasoline for which is being paid for by [7the employer is not chargeable with the supervisor’s deviation from the direct route home if the deviation was not initiated by the employee-passenger, was not for the passenger’s benefit, and the passenger had no control over the operation of the vehicle or the determination of the route to be taken. This was the principle pronounced specifically in Jagneaux, supra. See 185 So.2d at 794.
On . this record, witnesses other than the claimant met claimants, burden of proof. On this record, defendant did not meet his burden of proving, the affirmative defense. We have no suggestion of facts that support the conclusion that Brown’s deviation from the employer’s missions is legally imputable to Hoy. We have only the emphasis that on the facts that suggest that Hoy, a subordinate employee-passenger in his supervisor’s truck, was probably drunk or under the influence of alcohol even when Brown left his employer’s shop on the employer’s missions.
We shall reverse the judgment and remand for a judgment to be entered for the employee for the twelve week temporary total disability period in question, based on the stipulated wages of the employee and for stipulated medical and related benefits, with *78 legal interest from demand, as the law allows. Under the circumstances of this record, we shall not award penalties or attorney fees urged by claimant.
DECREE
The judgment of the WCO is reversed and the matter is remanded for further proceedings in accord with the foregoing opinion. Costs are assessed to the defendant-appellee.
HIGHTOWER, J., dissents with written reasons.
HIGHTOWER, J., further dissents.